IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| OPEN RANGE BEEF, LLC, a Delaware limited liability corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MARIO AVELAR a/k/a AVELAR BROTHERS DAIRY,<br><br>Defendant. | 8:23CV28<br><br>MEMORANDUM AND ORDER REGARDING MOTION FOR DEFAULT JUDGMENT |

This case is before the Court on the Motion for Entry of Default Judgment by plaintiff Open Range Beef, LLC, (ORB) against defendant Mario Avelar a/k/a Avelar Brothers Dairy (Avelar) pursuant to Federal Rule of Civil Procedure 55(b) and NECivR 55.1(b). Filing 14. ORB seeks a sum certain of $247,053.38. The Motion is granted.

### I. INTRODUCTION

#### A. Factual Background

Owing to Avelar's default in answering or otherwise responding to ORB's Complaint and Avelar's default in opposing ORB's Motion for Entry of Default Judgment in this action, the following facts are undisputed. ORB is a Delaware limited liability corporation with its principal place of business in Gordon, Nebraska. Filing 2 at 1 (¶ 1). ORB is a boutique organic beef packing plant. Filing 2 at 2 (¶ 5). Avelar is an individual residing in the State of California and a sole proprietor, operating under the alias Avelar Brothers Dairy, with a principal place of business in Ferndale, California. Filing 2 at 2 (¶ 2). In May of 2020, Avelar contacted ORB by telephone about selling cattle to ORB in Nebraska, and ORB agreed that, upon receiving a purchase order (PO) for cattle from ORB, Avelar would purchase cattle for ORB, ship the cattle to ORB in Nebraska at his own expense, and provide ORB with invoices, which ORB would pay. Filing 2 at 2 (¶ 7).

1

Sometime in early 2021, Avelar claimed to be short on cash and requested that ORB prepay Avelar on some orders of cattle, so Avelar would have sufficient funds to purchase the cattle that ORB ordered through its POs, and ORB agreed. Filing 2 at 2 (¶ 8). On September 27, 2021, ORB prepaid Avelar $160,000 on POs 17867, 17868, 17869, and 17870 ($40,000 for each PO) through wire transfer. Filing 2 at 2 (¶ 10); Filing 2-1 at 8 (wire confirmation). On October 4, 2021, Avelar delivered cattle to ORB in Nebraska fulfilling those POs and invoiced ORB $169,739.69 ($15,151.83 for PO 17867; $53,357.29 for PO 17868; $52,531.28 for PO 17869; and $48,699.29 for PO 17870). Filing 2 at 2 (¶ 11). Upon receiving Avelar's invoices, ORB again paid Avelar for the POs on October 5, 2021, this time for the invoiced amount of $169,739.69 ($15,151.83 for PO 17867; $53,357.29 for PO 17868; $52,531.28 for PO 17869; and $48,699.29 for PO 17870) through another wire transfer. Filing 2 at 3 (¶ 12); Filing 2-2 at 7 (wire confirmation). Thus, ORB overpaid Avelar by $160,000 on these POs. Filing 2 at 3 (¶ 12). When ORB discovered the overpayment in 2022 and contacted Avelar, Avelar agreed to pay ORB back for the overpayment. Filing 2 at 3 (¶ 13). On or about February 25, 2022, Avelar made a payment of $20,000 to ORB toward settlement of the overpayment, but Avelar thereafter made no additional payments, leaving a balance owed of $140,000. Filing 2 at 3 (¶¶ 14–15).

Sometime in February 2022, Avelar again contacted ORB to inform ORB that Avelar again did not have sufficient funds or cash on hand to purchase cattle that ORB had requested, and ORB again agreed to prepay Avelar for the cattle. Filing 2 at 3 (¶ 16). Consequently, on March 18, 2022, ORB prepaid Avelar $160,000 via wire transfer for POs 19509, 19510, 19511, and 19512. Filing 2 at 2 (¶ 17); Filing 2-3 at 7 (wire confirmation). Avelar sent one shipment of cattle to Avelar on June 22, 2022, valued at $52,046.62, but Avelar then stopped buying cattle for ORB, which left a remaining balance on the second prepayment of $107,953.38. Filing 2 at 3 (¶ 18). Avelar also

stopped answering calls and e-mails from ORB and still owes ORB $107,953.38 for cattle for which ORB prepaid but Avelar never purchased and/or shipped. Filing 2 at 4 (¶ 19).

The total remaining due for the inadvertent overpayment is $140,000, and the total remaining due for cattle for which ORB prepaid but Avelar never delivered is $107,953.38, resulting in a total amount due of $247,953.38. Filing 2 at 4 (¶¶ 20-22).

### B. Procedural Background

Avelar filed its Complaint in this matter on January 25, 2023, Filing 1, and that same day filed an Amended Complaint, Filing 2. In the First Cause of Action in the Amended Complaint, ORB asserts a claim for breach of contract alleging that Avelar breached the terms of his agreement with ORB by failing to repay Avelar for the amount ORB overpaid Avelar and by failing to purchase and ship cattle to ORB after ORB prepaid Avelar for cattle. Filing 2 at 4 (¶ 28). In the Second Cause of Action, ORB asserts promissory estoppel alleging that it conferred a benefit on Avelar when it overpaid him and then prepaid for cattle, which Avelar accepted and retained, but that Avelar then failed to repay the overpayment or deliver the prepaid shipment of cattle. Filing 2 at 5 (¶¶ 33–34). The Third Cause of Action asserts a claim of unjust enrichment alleging that injustice can only be avoided by enforcing Avelar's promise to repay ORB for the amount that was overpaid and to return the money that was prepaid to Avelar for the cattle that Avelar never purchased and/or delivered to Avelar. Filing 2 at 6 (¶ 41). Finally, in the Fourth Cause of Action, ORB asserts a claim for money had and received alleging that Avelar holds money and cattle that in equity and good conscience belong to ORB. Filing 2 at 6 (¶ 44).

On January 29, 2023, Avelar was properly served with copies of the summons and ORB's Amended Complaint. Filing 6. Avelar has not appeared in this matter nor filed any answer or other response to Avelar's Amended Complaint. At ORB's request, the Clerk of Court entered Avelar's

default on the record on April 19, 2023. Filing 13. ORB's Motion for Entry of Default Judgment followed on May 3, 2023. Filing 14. No timely response to that Motion has been filed.

## II. LEGAL ANALYSIS

### A. Default Judgment Standards

As the Eighth Circuit Court of Appeals has explained, "This court has recognized that default judgments are 'not favored by the law and should be a rare judicial act.'" *Belcourt Pub. Sch. Dist. v. Davis*, 786 F.3d 653, 661 (8th Cir. 2015) (quoting *In re Jones Truck Lines, Inc.*, 63 F.3d 685, 688 (8th Cir. 1995)). Instead, "there is a 'judicial preference for adjudication on the merits.'" *Id.* (quoting *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998)). Courts consider various factors when determining whether to enter a default judgment, including the following:

> [T]he amount of money potentially involved; whether material issues of fact or issues of substantial public importance are at issue; whether the default is largely technical; whether plaintiff has been substantially prejudiced by the delay involved; and whether the grounds for default are clearly established or are in doubt. Furthermore, the court may consider how harsh an effect a default judgment might have; or whether the default was caused by a good-faith mistake or by excusable or inexcusable neglect on the part of the defendant.

*Belcourt Pub. Sch. Dist.*, 786 F.3d at 661 (quoting (*Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*, 513 F. Supp. 2d 1, 3 (S.D.N.Y.2007)).

As the Eighth Circuit Court of Appeals has also explained,

> "[I]t is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." *Stephenson v. El-Batrawi*, 524 F.3d 907, 915 (8th Cir. 2008) (citation omitted). Rule 55(b)(2) entrusts the district court with the discretion to decide if a hearing on the issue of damages is necessary following default judgment, and nothing in Rule 55(b)(2) mandates that a jury determine the amount of damages, should the district court elect to hold a hearing. *See* Fed. R. Civ. P. 55(b)(2).

*KD v. Douglas Cnty. Sch. Dist. No. 001*, 1 F.4th 591, 601 (8th Cir.), *cert. denied*, 142 S. Ct. 485 (2021).

### B. ORB Is Entitled to Default Judgment

Although ORB requests entry of default judgment by the Clerk of Court for a sum certain pursuant to Federal Rule of Civil Procedure 55(b)(1), the Court concludes that it is more appropriate under the circumstances to consider entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). Notwithstanding that default judgment is "not favored by the law and should be a rare judicial act," *Belcourt Pub. Sch. Dist*, 786 F.3d at 661 (internal quotation marks and citations omitted), the Court finds that ORB has demonstrated that it is entitled to default judgment against Avelar in this case. Furthermore, the Court concludes that it may determine damages and enter default judgment accordingly without a hearing because the unchallenged record here more than sufficiently substantiates the damages to which ORB is entitled upon Avelar's default. *See KD*, 1 F.4th at 601 (the district court with the discretion to decide if a hearing on the issue of damages is necessary following default judgment).

Specifically, considering the pertinent factors, *see Belcourt Pub. Sch. Dist.*, 786 F.3d at 661, the Court notes that the amount of money involved is significant but not so significant as to cause the Court any hesitation based on a concern that default judgment would be unduly harsh. This is particularly true where there are no material issues of fact or issues of substantial public importance, and ORB's documentation and calculation of damages is unchallenged. *Id.*; *see also* Filing 14-1 (Aff. of James Loveridge) (establishing damages). Avelar's default also is not merely "technical" but indicative of an intent not to respond to or participate in this litigation. *Id.* Nothing in the record suggests that Avelar's default was caused by a good-faith mistake or excusable neglect, where Avelar has made no attempt to set aside the default since it was entered on April 19, 2022. *Id.* Moreover, ORB will be substantially prejudiced by further delay in the failure to

5

vindicate its rights, and Avelar will be unjustly enriched, where the grounds for Avelar's default are clearly established. *Id.*

Consequently, the Court finds that ORB has established damages in the amount of $247,953.38, consisting of $140,000 remaining due on the inadvertent overpayment and $107,953.38 remaining due for cattle for which ORB prepaid but Avelar never delivered. Filing 2 at 4 (¶¶ 20–22); Filing 14-1 (Aff. of James Loveridge) (establishing damages). There is no request for prejudgment interest or attorney's fees and costs in ORB's Motion for Entry of Default Judgment.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that

1.  ORB's Motion for Entry of Default Judgment, Filing 14, is granted;

2.  Pursuant to this Court's findings, a separate Final Default Judgment shall enter awarding damages in the amount of $247,953.38, consisting of $140,000 remaining due on the inadvertent overpayment and $107,953.38 remaining due for cattle for which ORB prepaid but Avelar never delivered.

Dated this 1st day of June, 2023.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge

6